**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

JANINE MAZZUTO CORNELL, BLAKE )
CORNELL, and AUSTIN CORNELL,[1]　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　)　　No. 2:19-cv-1370-DCN
　　　　　　　　　　　　　　　　　)
　　　　　　vs.　　　　　　　　　　)　　**ORDER**
　　　　　　　　　　　　　　　　　)
NICHOLAS ANDREW DONAJKOWSKI, )
and CAMPBELL FARM AND　　　　　　)
FORESTRY, INC.,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　)
_____ )

　　　This matter is before the court on defendants Nicholas Andrew Donajkowski

("Donajkowski") and Campbell Farm and Forestry, Inc.'s ("Campbell") (collectively,

"defendants") motion for partial summary judgment, ECF No. 36, and motion in limine,

ECF No. 37.  For the reasons set forth below, the court denies the motion for partial

summary judgment and grants in part and denies in part the motion in limine.

## I.  BACKGROUND

　　　This case arises out of a car accident that occurred in Colleton County.  On or

around September 6, 2017, plaintiff Janine Mazzuto Cornell and her son, plaintiff Blake

Cornell (collectively, "plaintiffs"), were travelling on Interstate 95 in a U-Haul vehicle

carrying their personal property when a semi-trailer truck, which was driven by

Donajkowski, struck their vehicle.  At the time of the accident, Janine Cornell's other son

accompanied plaintiffs on the interstate in a separate U-Haul vehicle that was not

---

[1] On June 8, 2020, the parties jointly filed a partial stipulation of dismissal,
dismissing Austin Cornell from this case.  ECF No. 67.  As such, Austin Cornell is no
longer a plaintiff to the action.

1

involved in the accident.  In their complaint, plaintiffs allege that they sustained serious injuries and significant personal property damage to the items they had in tow as a result of the accident.  On April 16, 2019, plaintiffs filed this action in the Colleton County Court of Common Pleas, alleging negligence against defendants.  ECF No. 1-1.  On May 10, 2019, defendants removed the matter to this court on the basis of the court's diversity jurisdiction.  ECF No. 1.  On May 23, 2019, the court entered a scheduling order, which set an October 9, 2019 deadline for plaintiffs to name expert witnesses and a March 3, 2020 deadline for discovery.  ECF No. 10.

On October 1, 2019, plaintiffs' first attorney filed an unopposed motion to withdraw as counsel, ECF No. 18, which this court granted on November 5, 2019, ECF No. 27.  The parties underwent discovery in this matter with plaintiffs proceeding pro se until the expiration of the discovery on March 3, 2020.  On March 10, 2020, defendants filed a motion for partial summary judgment, ECF No. 36, and a motion in limine, ECF No. 37.  On March 16, 2020, Chief Judge for the District of South Carolina Bryan Harwell issued a standing order in response to the ongoing COVID-19 pandemic, which extended the deadline for plaintiffs to respond to defendants' motions.  ECF No. 44.  On April 7, 2020, plaintiffs' newly retained counsel made his first appearance in this matter on plaintiffs' behalf.  ECF No. 47.  The same day, plaintiffs' counsel filed a motion for an extension of time to complete discovery.  ECF No. 48.  On April 20, 2020, the court granted the motion in relevant part, amending the deadline for plaintiffs to name expert witnesses to June 1, 2020, and the deadline for discovery to September 1, 2020.  ECF No. 59 (the "Amended Scheduling Order").  On May 4, 2020, plaintiffs responded to defendants' motion for partial summary judgment, ECF No. 63, and defendants' motion

in limine, ECF No. 62. On May 8, 2020, defendants replied to plaintiffs' response to the motion for partial summary judgment. ECF No. 64. Defendants did not file a reply with respect to the motion in limine, and the time to do so has now expired. As such, the motions are ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, "'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law . . . ." Id. at 248. And a dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining the appropriateness of summary

judgment, the court draws all reasonable inferences of fact in favor of the non-moving

party and views all evidence in the light most favorable to the non-moving party.

Anderson, 477 U.S. at 255; Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir.

2012).  However, to defeat summary judgment, the nonmoving party must rely on more

than conclusory allegations, mere speculation, the building of one inference upon

another, or the mere existence of a scintilla of evidence.  See Anderson, 477 U.S. at 252;

Stone, 105 F.3d at 191.  If the adverse party fails to provide evidence establishing that the

factfinder could reasonably decide in his favor, then summary judgment shall be entered

"regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'"

Id. (quoting Anderson, 477 U.S. at 248).

### III.   DISCUSSION

Defendants have filed a motion in limine, which asks the court to exclude certain

evidence from trial, and a motion for partial summary judgment, which asks the court to

resolve certain issues in defendants' favor as a matter of law.  Because some grounds for

defendants' motion for partial summary judgment are premised upon the exclusion of

evidence, the court first analyzes the motion in limine and then turns to the partial

summary judgment motion.

#### A. Motion in Limine

Defendants' motion in limine includes eight separate requests that ask the court to

exclude a category of evidence as inadmissible.  Plaintiffs do not dispute defendants'

first, second, fourth, and fifth requests and, with respect to those requests, "agree to [the]

relief sought [by defendants]."  ECF No. 62 at 1.  The evidence those motions seek to

exclude are as follows: (1) "evidence of the Uniform Traffic Collision Report"

4

concerning the subject accident, (2) evidence of Donjkowski's "prior accidents and/or prior traffic citations," (4) evidence of insurance payments made to plaintiffs from Campbell's policy, and (5) evidence related to any "automobile liability carrier involved [in the case]" or evidence "relating to the existence of a liability insurance policy." ECF No. 37 at 1–3. Because the parties agree, the court grants defendants' first, second, fourth, and fifth requests within their motion in limine. The parties do dispute, however, the motion in limine's third, sixth, seventh, and eighth requests. The court discusses each in turn.

### 1. Request 3: Donajkowski's Traffic Citation

The third request of defendants' motion in limine asks the court to exclude as inadmissible "the citation received by Donajkowski as a result of the accident at issue in this case." ECF No. 37 at 2. Defendants argue that South Carolina law specifically makes inadmissible evidence of a conviction under a traffic statute, citing S.C. Code Ann. § 56-5-6160. In response, plaintiffs "agree that the citation itself is not admissible" but "contend that testimony regarding violation of applicable statutes is admissible." ECF No. 62 at 1. Defendants' motion does not ask the court to exclude testimony or other evidence regarding the conduct that underlies Donajkowski's citation, i.e., his allegedly unsafe driving. Therefore, the court grants defendants' motion as to the citation itself with the caveat that exclusion of the citation does not preclude defendants from presenting other evidence that Donjkowski violated a South Carolina traffic statute. See Hill v. USA Truck, Inc., 2007 WL 1574545, at *8 (D.S.C. May 30, 2007) (finding that § 56-5-6160 "only forbids evidence of a conviction," not testimony as to the underlying violation or other evidence thereof).

## 2. Request 6: Medical Records

The sixth request of defendants' motion in limine asks the court for "an order preventing Plaintiffs from introducing medical records and testifying regarding any statements, diagnoses, or other information contained therein." ECF No. 37 at 4. Defendants argue that "such evidence or testimony is hearsay[,] as the medical records do not qualify as business records under [FRE] 803(6) . . . ." Id. The court admits some confusion as to this request. It is unclear whether defendants are objecting to the introduction of the medical records generally or to plaintiffs, themselves, introducing such evidence. Plaintiffs seem to think that defendants are moving to prohibit plaintiffs' introduction of the evidence: "we would agree that the Plaintiffs themselves cannot testify or introduce their medical records, but we contend that the treating physician can certainly introduce and testify [about] medical records." ECF No. 62 at 1.

It is true that if plaintiffs, themselves, were to introduce medical records, the records would run afoul of FRE 802's prohibition on hearsay because the exception that applies to business records requires "the testimony of a [records] custodian or another qualified witness." Fed. R. Evid. 803(6). It is also true that plaintiffs' testimony about medical records would likely violate FRE 702, as the testimony would require "specialized knowledge" and thus an expert witness. Fed. R. Evid. 702. Of course, neither of these barriers to the medical records' admissibility would exist if they were introduced by plaintiffs' treating physician. It is well accepted that medical records, when introduced by a qualified witness, such as the physician that prepared them, fall within the business records exception to the hearsay rule. See Doali-Miller v. SuperValu, Inc., 855 F. Supp. 2d 510, 516 (D. Md. 2012) (noting that the business records exception

to the hearsay rule includes the word "diagnosis"). And, of course, courts routinely qualify physicians as experts to testify about medical records.

The court imagines that defendants' motion stems from the fact that plaintiffs failed to name an expert witness before the expiration of the initial deadline to do so. However, in the time since defendants filed their motion, the court amended that deadline and plaintiffs timely identified an expert witness. Therefore, to the extent that defendants are asking the court to preclude the plaintiffs, themselves, from introducing medical records or from testifying about the contents thereof, the court grants the motion. However, to the extent that defendants request a ruling that the medical records and accompanying testimony are generally inadmissible, the court denies the motion.

### 3. Motion in Limine 7: Future Damages

Defendants' seventh request asks the court "to exclude all evidence and testimony regarding any alleged future damages claimed by plaintiffs, including future medical treatment, costs, life care needs, pain and suffering, medication, earning capacity, and the like." ECF No. 37 at 4. Defendants argue that such testimony would require expert testimony and that plaintiffs are unqualified to testify as experts regarding future medical care. Again, the court believes that the grounds for this motion are a product of the case's previous procedural posture. Defendants filed their motion in limine after the expiration of the initial deadline for plaintiffs to name expert witnesses, but, in the time since, the court extended that deadline and plaintiffs have now timely named expert witnesses. Accordingly, plaintiffs explain in their response that their naming of an expert moots defendants' seventh motion in limine. Indeed, defendants' request is premised

entirely on the absence of expert testimony.  Because plaintiffs have now named experts, the court denies this request.[2]

### 4. Motion in Limine 8: Personal Property Damage Itemization

After the accident, Janine Cornell prepared a list for her insurance adjuster of all the items of personal property that she transported on the day of the accident.  This list, which the parties refer to as the "Personal Property Damage Itemization", includes items of personal property that were in the U-Haul involved in the accident and items that were in the other U-Haul that not involved in the accident.  Defendants argue that the Personal Property Damage Itemization is too speculative to be received by the jury as evidence of damages, or, alternatively, that it is inadmissible hearsay.  The court addresses each argument in turn.

First, defendants posit that the Personal Property Damage Itemization is too speculative to be presented to a jury because the itemization includes both items that were damaged in the accident and items that were not involved in the accident.  In short, defendants argue that the Personal Property Damage Itemization "is nothing more than an inventory of all personal property Cornell owns and her valuations of the property, without regard to whether such property was actually damaged in the subject accident." ECF No. 3 at 6.  In support of their motion, defendants rely on the well-known standard that governs a plaintiff's burden of production with respect to damages in South Carolina: "the existence or amount of damages cannot be left to conjecture, guess, or speculation." Piggy Park Enterprises, Inc. v. Schofield, 162 S.E.2d 705, 708 (S.C. 1968).  The problem

---

[2] This holding does not preclude defendants from challenging the qualifications or potential testimony of plaintiffs' expert witness prior to trial.

with defendants' argument is that the law on which they rely governs the plaintiffs'

burden of production, not the admissibility of a single piece of evidence.

Defendants are correct that evidence of damages in South Carolina "should allow

the court or jury to determine the amount of damages with reasonable certainty or

accuracy." Gauld v. O'Shaugnessy Realty Co., 671 S.E.2d 79, 85 (S.C. Ct. App. 2008).

However, that law applies to all evidence of damages a plaintiff produces and whether

that evidence satisfies the burden of production, such that the issue of damages can be

properly placed before the jury. It does not govern the admissibility of evidence and does

not give the court reason to exclude a particular piece of evidence. Indeed, in each of the

cases defendants cite in support of their argument, the court considered whether plaintiffs

had satisfied their burdens of production after the presentation of all their evidence of

damages, after the close of discovery. See Piggy Park, 162 S.E.2d at 708 (finding that

the jury had a reasonable evidentiary basis for its verdict); Gauld, 671 S.E.2d at 85

(affirming trial court's grant of summary judgment on the issue of damages, finding that

"there was no competent, admissible evidence of the existence or amount of damages");

Baughman v. Am. Tel. & Tel. Co., 410 S.E.2d 537, 544 (S.C. 1991) (finding that the trial

court's grant of summary judgment on the issue of damages was premature because

discovery had not expired and future discovery was likely to uncover additional evidence

of damages).

The law on which defendants rely does not govern the admissibility of each

individual piece of evidence. Rather, it governs whether a plaintiff's evidence of

damages, taken as a whole, is too speculative and uncertain to justify presenting the issue

to the jury. As such, this law has nothing to say about the admissibility of a piece of

evidence.  The touchstone of admissibility, on the other hand, is relevancy, not accuracy or reasonable certainty.  See Fed. R. Evid. 402 ("Relevant evidence is admissible . . .").  Defendants do not argue that the Personal Property Damage Itemization is not relevant to the issue of plaintiffs' alleged damages, and the court has little difficulty concluding that it is relevant.  Alleged inaccuracies of a piece of evidence can be addressed on cross-examination, but they do not render a piece of otherwise relevant evidence inadmissible.  Therefore, the court finds that the Personal Property Damage Itemization is admissible.

Further, defendants offhandedly argue that "[a]s an initial matter, [the Personal Property Damage Itemization] is an out-of-court statement offered for the truth of the matter asserted, and is, therefore, barred by" the federal prohibition on hearsay.  Because the evidence fits within a common hearsay exception, however, the court disagrees.  Hearsay is evidence of a statement made by an out-of-court declarant, offered to prove the truth of the matter the statement asserts.  Fed. R. Evid. 801.  FRE 802 precludes the admission of hearsay evidence unless a federal statute, a rule prescribed by the Supreme Court, or a different Federal Rule of Evidence advises otherwise.  One such rule, FRE 803, provides several exceptions to the general prohibition on hearsay, and one such exception makes admissible "recorded recollections."  FRE 803(5).  A recorded recollection can be read into evidence where it (1) concerns "a matter the witness once knew but now cannot recall well enough to testify fully and accurately," (2) "was made or adopted by the witness when the matter was fresh in the witness's memory," and (3) "accurately reflects the witness's knowledge."  Id.[3]

---

[3] While admissible, a recorded recollection "may be read into evidence but may be received as an exhibit only if offered by an adverse party."  Fed. R. Evid. 803(6).

The Personal Property Damage Itemization might prove to be admissible as a recorded recollection.  The Itemization constitutes a list of personal property items and their valuation, a matter on which plaintiffs preserved a record but likely could not remember well enough to recount with precise accuracy; plaintiffs claim it was prepared by Janine Cornell; and it likely accurately reflects plaintiffs' knowledge.  In the event that plaintiffs show that the Personal Property Damage Itemization meets each of these elements at trail, the federal prohibition on hearsay will not apply.  With no basis in the law to exclude the Personal Property Damage Itemization as inadmissible, the court denies defendants' motion.

**B. Motion for Partial Summary Judgment**

Defendants' motion for partial summary judgment asks the court for judgment as a matter of law with respect to three issues.  First, defendants request summary judgment "as to any damages claimed by Plaintiffs for future care and surgeries because they have not identified any experts who can support such claims . . . ."  ECF No. 36 at 1.  As the court noted above, defendants filed their motions prior to the court's amendment of the scheduling order, which extended the deadline for plaintiffs to name expert witnesses.  In their reply brief, filed after the amended scheduling order, defendants concede "that a ruling on Defendants' motion for partial summary judgment with respect to this issue should be held in abeyance until the close of discovery" because plaintiffs have now named expert witnesses and did so within the permissible time period.  ECF No. 64 at 1 n.1.  As such, the court denies without prejudice defendants' motion with respect to their first ground and permits defendants, if warranted, to file another summary judgment motion with respect to this issue after discovery has closed.

11

The latter two grounds for defendants' motion, however, remain in dispute.  First, defendants ague that they are entitled to summary judgment "as to the scope of the claimed property damage sought in this matter as the damages claimed are speculative and uncertain."  ECF No. 36 at 1.  Second, defendants argue that "summary judgment is appropriate with respect to Plaintiffs' claims for punitive damages as there is no evidence of anything more than simple negligence[,] which will not support a claim for punitive damages."  Id.  The court addresses each argument in turn, disagreeing on both fronts and denying the motion in full.

### 1. Property Damages

Defendants request summary judgment with respect to plaintiffs' claim for property damages.  This ground of defendants' summary judgment motion is not dissimilar from their eighth motion in limine, which asked the court to exclude plaintiffs' Personal Property Damage Itemization as unduly speculative.  With respect to the partial summary judgment motion, defendants argue that the Personal Property Damage Itemization is the only evidence of property damage that plaintiffs have produced and that it is overly speculative because it would not allow the jury "to determine the amount of damages with reasonable certainty or accuracy."  Gauld, 671 S.E.2d at 85.  Defendants contend that the Personal Property Damage Itemization in fatally speculative for two reasons.  First, the list includes both items that were involved in the accident and items that were not, and Janine Cornell testified that she "doesn't remember exactly which" items were damaged in the accident and which were not.  Second, defendants take issue with plaintiffs' valuation of the items, noting that Janine Cornell "assign[ed] present-day value to many of her items that she determined through a Google search . . . ."  ECF No.

36 at 8.  In response, plaintiffs argue that the Personal Property Damage Itemization, coupled with Janine Cornell's testimony "clearly show that she has provided a reasonably close estimate of loss."  ECF No. 63 at 4–5.  Alternatively, plaintiffs "ask the Court [to] rule that summary judgment is not ripe for [ ] disposition [ ] at this time" because "[t]here is outstanding discovery left to be conducted."  Id. at 2.  Because the court agrees that an entry of summary judgment on this issue would be premature, it denies defendants' motion with respect to the issue of personal property damages.

Fed. R. Civ. P. 56(d)[4] states:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

It is well-settled that a district court should refuse summary judgment "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986).  However, a "party opposing summary judgment cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery."  Harrods Ltd. v. Sixty

---

[4] This rule was previously codified at Fed. R. Civ. P. 56(f).  See Fed. R. Civ. P. 56, Comments to the 2010 Amendments ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)").  As a result, much of the case law that discusses the rule does so with reference to 56(f).  However, because the amendment effected no substantive change to the rule, the court finds that case law discussing pre-amendment Rule 56(f) applies with equal force to its consideration of post-amendment Rule 56(d).

Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (citing Evans v. Technologies

Applications & Service Co., 80 F.3d 954, 961 (4th Cir. 1996) (internal quotation marks

removed)).

Generally, the proper vehicle for such a complaint is a Rule 56(d) affidavit in

which a party declares the need for additional discovery.  In fact, the Fourth Circuit has

stated that

> reference to Rule 56[d] and to the need for additional discovery in a
> memorandum of law in opposition to a motion for summary judgment is not
> an adequate substitute for a Rule 56[d] affidavit[,] and the failure to file an
> affidavit under Rule 56[d] is itself sufficient grounds to reject a claim that
> the opportunity for discovery was inadequate.

Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (citing

Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)).  Nevertheless,

in Harrods Ltd., a more recent case, the Fourth Circuit embraced a less formalistic

approach, finding that summary judgment is not justified "if the nonmoving party's

objections before the district court serve[ ] as the functional equivalent of an affidavit,

and if the nonmoving party was not lax in pursuing discovery."  302 F.3d at 245.  There,

the Fourth Circuit found that summary judgment was not warranted because the

nonmoving party "adequately fulfilled the purpose of Rule 56[d] by putting the district

court on notice of the reasons why summary judgment was premature [in its

memorandum opposing summary judgment]." Id.

Here, plaintiffs have not filed a Rule 56(d) affidavit declaring their need for

additional discovery.  However, they have provided the "functional equivalent" in their

response to defendants' motion for summary judgment by noting that summary judgment

is premature and that additional discovery needs to be conducted.  Moreover, there is no

evidence that plaintiffs have been leisurely in their pursuit of discovery.  As the court discussed above, plaintiffs' original counsel withdrew from representation in November 2019.  Plaintiffs proceeded pro se until April 2020, at which time their newly retained counsel entered an appearance.  Since April, plaintiffs' counsel has been active in litigating the case, as reflected by recent influx of entries on the court's docket.  In giving plaintiffs the benefit of the doubt procedurally, the court is cognizant that they litigated their case without the benefit of an attorney for five months, during which time defendants filed their partial summary judgment motion and motions in limine.  See Sinclair v. Mobile 360, Inc., 417 F. App'x 235, 243 (4th Cir. 2011) (finding that a pro se plaintiff facing summary judgment is "entitled to the less stringent standards applicable to such litigants") (quoting and citing Campbell v. Hewitt, Coleman & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994) ("[A] court should not grant summary judgment unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.")).  As such, the court declines to enter summary judgment on this issue before plaintiffs have had a full opportunity acquire and present additional evidence of their alleged property damage.  Therefore, the court denies defendants' motion for summary judgment with respect to plaintiffs' claim for property damages without prejudice.

### 2. Punitive Damages

The second contested ground of their motion, defendants request summary judgment on plaintiffs' prayer for punitive damages.  Specifically, defendants argue that plaintiffs have failed to present any evidence of willfulness or recklessness, a required

element for punitive damages under South Carolina law. Alternatively, defendants argue that punitive damages are not available "with respect to Campbell individually" because an employer in South Carolina cannot be vicariously liable in punitive damages for the conduct of its employee. The court addresses each argument in turn.

In South Carolina, the issue of whether to award punitive damages should be submitted to the jury where "there is evidence that a tortfeasor's conduct was willful, wanton, or in reckless disregard of the rights of another." Cartee v. Lesley, 350 S.E.2d 388, 390 (S.C. 1986) (citing Fox v. Munnerlyn, 323 S.E.2d 68 (S.C. Ct. App. 1984)). "Ordinarily, the test is whether the tort has been committed in such a manner or under circumstances that a person of ordinary reason or prudence would have been conscious of it as an invasion of the plaintiff's rights." Id. (citing Hinson v. A.T. Sistare Construction Company, Inc., 113 S.E.2d 341 (S.C. 1960)). "It is always for the jury to determine whether a party has been reckless, willful, and wanton." Wise v. Broadway, 433 S.E.2d 857, 859 (S.C. 1993) (citing Ralls v. Saleeby, 182 S.E. 750 (S.C. 1935)).

A defendant's violation of a statute in South Carolina "does not constitute recklessness, willfulness, and wantonness per se, but it is some evidence that the defendant acted recklessly, willfully, and wantonly." Wise, 433 S.E.2d at 859. Therefore, South Carolina courts have long held that the test for punitive damages "may also be satisfied by evidence of the causative violation of an applicable statute." Fairchild v. S.C. Dep't of Transp., 727 S.E.2d 407, 412 (S.C. 2012) (citing Cartee, 350 S.E.2d at 390). Evidence of a defendant's statutory violation "creates[s] a jury question as to whether or not" that defendant "acted with recklessness." Fairchild, 727 S.E.2d at

413.  Accordingly, such evidence "requir[es] submission of the issue of punitive damages to the jury."  Id.

The South Carolina Supreme Court has held that evidence of a violation of a traffic alone statute constitutes evidence of recklessness and thus requires a court to submit the issue of punitive damages to the jury.  In Wise v. Broadway, the plaintiff argued to the trial court that evidence that the defendant violated S.C. Code Ann. § 56-5-1930(a), which makes illegal following another's vehicle too closely, required the issue of punitive damages to be submitted to the jury.  433 S.E.2d at 859.  The trial judge disagreed and struck the plaintiff's prayer for punitive damages, reasoning, "I don't think that a simple violation of this statute would give rise to anything but actual damages."  Id.  The Supreme Court of South Carolina disagreed:

> Here, there is evidence from which the jury could have concluded that respondent violated section 56-5-1930(a).  Had the jury so found, the violation of section 56-5-1930(a) would be negligence per se and evidence of recklessness from which the jury could find that the respondent was guilty of reckless conduct, and, consequently, liable for punitive damages.

Id.  Accordingly, the Supreme Court reversed the decision of the trial court and remanded the case for a new trial.  In Fairchild, the Supreme Court reaffirmed Wise, finding that evidence that the defendant violated two traffic statutes "required" submission of the issue of punitive damages to the jury.  727 S.E.2d at 413.

Here, plaintiffs allege that Donajkowski violated a South Carolina traffic statute because he was driving too fast for conditions, for which he received a citation, and because he "was not paying attention" at the time of the accident.  ECF No. 63 at 5.  Although plaintiffs fail to inform the court which South Carolina statute they allege Donajkowski violated, the court assumes plaintiffs are referring to S.C. Code Ann. § 56-

17

5-1520, which prohibits "driv[ing] a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing." Plaintiffs argue that they plan to present the testimony of the state trooper who investigated the accident, who will testify that Donajkowski's conduct at the time of the accident violated the applicable statute.[5] As such, plaintiffs intend to present competent evidence that Donajkowski violated the South Carolina statute, which the South Carolina Supreme Court has held constitutes evidence of recklessness and requires submission of the issue of punitive damages to the jury. See Fairchild, 727 S.E.2d at 413; see also Wise, 433 S.E.2d at 859.[6] Although plaintiffs have not yet presented any evidence that Donjkowski violated a South Carolina statute, discovery in this matter has not closed and entry of summary judgment on this issue would prematurely deprive plaintiffs the opportunity to gather supporting evidence. Therefore, the court denies defendants' motion for partial summary judgment to the extent that it argues that plaintiffs are not entitled to punitive damages as a matter of law.

---

[5] Defendants, mirroring arguments made in their motions in limine, contend that because the citation Donajkowski received as a result of the accident and the accompanying traffic report are inadmissible, plaintiffs have not presented evidence of a statutory violation. Of course, as discussed above, South Carolina law does not preclude plaintiffs from presenting evidence of Donajkowski's conduct that violated South Carolina law, such as testimony that he was driving too fast for conditions.

[6] Defendants rely on Benjamin v. Shaw, a case from this district, to support their contention that evidence of Donjkowski's violation of a statute does not require the issue of punitive damages to be submitted to the jury. 2017 WL 3205798 (D.S.C. July 28, 2017). Defendants' reliance is misplaced. There, the court held a bench trial, requiring it to make conclusions of law and findings of fact. Wearing its legal hat, the court determined that evidence that the defendant violated a statute "warranted[ed] submitting the issue of punitive damages to the finder of fact." Id. at *10. Separately, stepping into the shoes of the factfinder, the court found that the plaintiff's evidence was insufficient to entitle her to punitive damages. Id. at *11. In other words, Bejamin v. Shaw supports plaintiffs' position that evidence of a statutory violation requires the submission of the issue of punitive damages to a jury.

Next, defendants contend that even if plaintiffs have presented sufficient evidence of punitive damages with respect to Donajkowski, that liability cannot be imputed vicariously to Campbell, Donajkowski's employer, under South Carolina law. Because plaintiffs do not claim that Campbell was independently negligent, defendants conclude, Campbell cannot be held liable in punitive damages as a matter of law. The court disagrees, finding that although South Carolina law on the issue is unsettled, the South Carolina Supreme Court would likely embrace the majority view, under which an employer can be held vicariously liable in punitive damages for the acts or omissions of its employee pursuant to ordinary principles of respondeat superior.

Defendants cite two cases to support their contention that an employer cannot be vicariously liable in punitive damages for the conduct of its employee under South Carolina law. First, defendant rely on a relatively recent case from the South Carolina Supreme Court, Gause v. Smithers, 742 S.E.2d 644 (S.C. 2013). There, a police officer sued a father after the father's son parked negligently on an active highway, causing an accident involving the police officer's vehicle. The trial court found that the father could be held vicariously liable in punitive damages for the reckless conduct of his son under the family purpose doctrine. After trial, a jury rendered a verdict in favor of the police officer, finding the father liable in both actual and punitive damages. On appeal, the father argued that South Carolina should not permit the vicarious imposition of punitive damages under the family purpose doctrine. For some context, the family purpose doctrine imposes liability upon the owner of a vehicle for the negligent acts of a family member whether that family member used the vehicle for a "family purpose." Gause, 742 S.E.2d at 648 (citing Reid v. Swindler, 154 S.E.2d 910, 916 (S.C. 1967)). The

Supreme Court began its analysis of the issue, which was one "of first impression" in the state, by noting that "[o]nly a limited number of jurisdictions have adopted the family purpose doctrine" and "[o]f those states, only two have addressed whether punitive damages should be allowed and both have answered in the negative." Id. at 650. After considering the rationale of those state courts, the court concluded:

> We agree with these courts' reasoning that the family purpose doctrine's reliance on agency principles is somewhat of a legal fiction which cannot logically be extended to allow recovery of punitive damages. The parallel between a parental relationship and an employment relationship can only be stretched so far. A principal can dictate the parameters of the use of a vehicle more narrowly than a parent who merely allows his child to use a car for the convenience of the family. Moreover, because a principal stands to gain financially from the actions of an agent, it makes more sense to allow additional monetary damages in the form of punitive damages against a principal.

Id. at 651.

The court's conclusion makes clear that its holding applies only to the family purpose doctrine and not to other theories of vicarious liability. The court noted that the policy principles that undergird doctrines of vicarious liability under traditional agency theories do not apply with the same force to the family purpose doctrine. In so doing, the Supreme Court actually implied that traditional doctrines of South Carolina agency law, like respondeat superior, would support the vicarious imposition of punitive damages. See id. ("Moreover, because a principal stands to gain financially from the actions of an agent, it makes more sense to allow additional monetary damages in the form of punitive damages against a principal."). In other words, the rationale underlying Gause—that the family purpose doctrine is incompatible with traditional agency principles—suggests that South Carolina law would permit a principal to be held vicariously liable in punitive damages for the conduct of its agent under traditional agency theories of vicarious

20

liability, like respondeat superior.  Therefore, Gause's holding that punitive damages

cannot be imposed vicariously through the family purpose doctrine does not stand for the

proposition that punitive damages cannot be imposed upon an employer for the acts of its

employee.  As such, Gause does not convince the court that the law in South Carolina is

what the defendants suggest it is.

Second, defendants support their supposition of the law in South Carolina with

citation to a one-hundred-and-seventeen-year-old case, Riser v. S. Ry. Co., 46 S.E. 47,

(S.C. 1903).  That case states in relevant part, with all appropriate context included:

> The assignments of error in the sixteenth and twenty-second exceptions are
> as follows:
>
> (22) Error of the presiding judge in refusing the defendants' sixth request to
> charge, which contained a correct proposition of law applicable to the case,
> as follows: 'A master is not responsible in punitive damages for the willful
> tort of his servant, unless he authorized or ratified it.'  To hold otherwise
> would deprive the master of his property without due process of law,
> contrary to amendment 14, Constitution of the United States.

Id. at 51.  The court is unconvinced that Riser is reflective of the current state of the law

in South Carolina for two reasons.  First, Riser's statement of the law, bereft of any legal

analysis or factual context, is based on the theory that holding a principal liable in

punitive damages for the acts of its employee "would deprive the master of his property

without the due process of law contrary to [the Fourteenth] [A]mendment . . . ."  Id.  In

the century following Riser, the Supreme Court of the United States, the ultimate

authority on the Constitution, has debunked such an interpretation.  See Pac. Mut. Life

Ins. Co. v. Haslip, 499 U.S. 1, 15 (1991) (finding that the imposition of punitive damages

on a corporation based on the conduct of its employer "is not fundamentally unfair and

does not in itself violate the Due Process Clause").

Second, <u>Riser</u>'s naked statement of the law fails to articulate any legitimate policy principles that might justify South Carolina's departure from the majority approach, and South Carolina cases since <u>Riser</u> have failed to reinforce its statement of law.  In fact, the South Carolina Court of Appeals has recently indicated that the issue is unsettled in South Carolina.  In <u>Cody P. v. Bank of Am., N.A.</u>, the Court of Appeals considered an employer's argument that it should not be held vicariously liable in punitive damages for the actions of its employee.  720 S.E.2d 473 (S.C. Ct. App. 2011).  In response, the court indicated that South Carolina had not adopted an approach to that issue:

> [Employer] submits if we find [the plaintiff] proved punitive damages by clear and convincing evidence, we should not find it liable for punitive damages under the facts of this case because it lacked complicity with the actions of its employees.  In short, [employer] asks us to adopt the complicity doctrine set forth in the Restatement (Second) of Torts § 909 (1965).  We find this issue is unpreserved for our review because [employer] failed to raise it in its motion for a directed verdict on punitive damages.

<u>Id.</u> at 482 n.4.  As such, the court finds that the issue is unsettled in South Carolina. While defendants would like to elevate a single sentence, devoid of any context, from a one-hundred-year-old case as well-settled doctrine in South Carolina, the cases decided in this millennium clearly indicate that <u>Riser</u>'s bare statement of the law no longer holds weight.

Because South Carolina law is unsettled, the court resolves the issue by employing its "best guess" as to what the Supreme Court of South Carolina would do.  A federal court sitting in diversity jurisdiction must apply the law of the state's highest court.  <u>Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.</u>, 296 F.3d 308, 312 (4th Cir. 2002).  Where, the law of the forum state is unsettled, "the district court attempts to do as the state court would do if confronted with the same fact pattern."  <u>Roe</u>

v. Doe, 28 F.3d 404, 407 (4th Cir. 1994); see also Twin City Fire Ins. Co. v. Ben Arnold–Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005) ("If the Supreme Court of South Carolina has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue.") (citation and internal quotation marks omitted).  "In deciding how the courts of South Carolina would rule, this court is authorized to consider all available legal sources, including restatements of the law, treatises, law review commentaries, decisions from other jurisdictions whose doctrinal approach is substantially the same, and the 'majority rule.'" TC X, Inc. v. Commonwealth Land Title Ins. Co., 928 F.Supp. 618, 623 (D.S.C.1995) (citation omitted).  The court may also consider "well considered dicta," Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002), and "recent pronouncements of general rules or policies by the state's highest court," Wells v. Liddy, 186 F.3d 505, 528 (4th Cir. 1999).

Here, the majority approach to this issue, the outcome of recent South Carolina cases, and the law of the South Carolina's neighbors convince the court that the South Carolina Supreme Court, if confronted with the facts at hand, would adopt the view that an employee can be held liable in punitive damages for the acts and omissions of its employer under ordinary principles of respondeat superior.  For one, a majority of jurisdictions that have confronted the issue have embraced this view.  See 2 Barry A. Lindahl, Modern Tort Law: Liability and Litigation § 20:28 (2d ed. 2020) (collecting cases).  Under the majority approach, an employer can be held vicariously liable for punitive damages for the conduct of its employee where the employee was acting within the scope of the employment relationship.  See, e.g., Mazza v. Med. Mut. Ins. Co. of N.

<u>Carolina</u>, 319 S.E.2d 217, 221 (N.C. 1984).  The other approach, which has been adopted in a "substantial minority" of jurisdictions and is reflected in the Restatement (Second) of Torts § 909, requires that an employer be "complicit" in the conduct of its employee before punitive damages can be vicariously imposed.  <u>See</u> 2 Barry A. Lindahl, Modern Tort Law: Liability and Litigation § 20:28 (2d ed. 2020) (collecting cases).  The fact that the majority view is contrary to defendants' position weighs in favor of the court permitting punitive damages against Campbell.

Further, the outcome of several South Carolina cases indicate that the state permits the vicarious imposition of punitive damages from employee to employer.  As an initial matter, some <u>Riser</u>-era cases have less ambiguously held that an employer can be held vicariously liable for the conduct of its employee.  <u>See</u> <u>Reeves v. S. Ry.</u>, 46 S.E. 543, 545 (S.C. 1904) (answering the question "is a master liable in punitive damages for the willful tort of a servant?" in the affirmative); <u>see also</u> <u>Hooper v. Hutto</u>, 158 S.E. 726, 727 (S.C. 1931) (holding that an employer need not ratify the conduct of its employee to be vicariously liable in punitive damages for the employee's conduct).  Even more convincing to the court, however, are the South Carolina cases from this era.

In <u>Austin v. Specialty Transp. Servs., Inc.</u>, the South Carolina Court of Appeals affirmed an award of punitive damages against an employer when its employee "violated S.C. Code Ann. §§ 56–5–2330(b) and –27404 [ ] by failing to stop and yield the right of way to [plaintiffs'] vehicle."  594 S.E.2d 867, 875 (S.C. Ct. App. 2004).  Although the court did not adopt the majority approach outright, the court indicated that South Carolina law permits the imposition of punitive damages through vicarious liability under the doctrine of respondeat superior in two ways.  First, the court upheld the verdict, which

imposed punitive damages against the employer based on its employee's reckless

conduct.  Second, in so doing, the court rejected the employer's argument that the

employee's dismissal from the case precluded the imposition of punitive damages upon

the employer:

> [Employer] maintains the trial court erred in awarding damages based on the actions of the [employee] because the [employee] was previously dismissed as a party to this action.  [Employer]'s reliance on [the] cases [it cites in support] is misplaced.  These cases only stand for the proposition that, when a principal and servant are sued together, a principal is not responsible for punitive damages under respondeat superior when the agent was exonerated from liability.  In the instant case, the [employee] was dismissed as a party to the case, not exonerated from liability.  Concomitantly, [employer]'s argument fails.

Id. at 878 (internal citations omitted).  Clearly both the outcome of the case and the

court's analysis indicates that South Carolina law permits an employer to be held liable in

punitive damages for the conduct of its employee.  Other South Carolina cases have

similarly upheld an award of punitive damages against an employer based on an

employee's tort.  See Lee v. Regal, Inc., 2008 WL 9832882, at *5 (S.C. Ct. App. Jan. 24,

2008).

Additionally, both North Carolina and Georgia have unequivocally adopted the

majority view and permitted the vicarious imposition of punitive damages upon an

employer based on the acts and omission of an employee.  See Carnegay v. WalMart

Stores, Inc., 839 S.E.2d 176, 184 (Ga. App. 2020) (quoting Miller v. City Views at Rosa

Burney Park GP, LLC, 746 S.E.2d 710, 715 (Ga. App. 2013), aff'd sub nom. Ambling

Mgmt. Co., LLC v. Miller, 764 S.E.2d 127 (Ga. 2014) ("[E]mployers or principals may

be vicariously liable for punitive damages arising from the acts or omissions of their

employees or agents if such tortious conduct is committed in the course of the employer's

or principal's business, within the scope of the servant's or agent's employment, and is sufficient to authorize a recovery of punitive damages.")); see also Mazza, 319 S.E.2d at 221 ("The law and public policy in North Carolina regarding liability for punitive damages under the doctrine of respondeat superior is germane to the issue involved in the present case.  In our State, a master is liable for punitive damages awarded when the servant or agent causing the injury was acting in the course and scope of the master's business.").  The court sees no reason why the state of South Carolina would decline to follow in the footsteps of its neighbors.

Finally, the majority view best reflects the public policy principles that underlie punitive damages in South Carolina.

> Exemplary or punitive damages go to the plaintiff, not as a fine or penalty for a public wrong, but in vindication of a private right which has been willfully invaded; and indeed, it may be said that such damages in a measure compensate or satisfy for the willfulness with which the private right was invaded, but, in addition thereto, operating as a deterring punishment to the wrongdoer, and as a warning to others . . . . Punitive damages have now come, however, to be generally, though not universally, regarded, not only as punishment for wrong, but as vindication of private right.  This is the basis upon which they are now placed in this state.

Clark v. Cantrell, 529 S.E.2d 528, 533 (S.C. 2000) (quoting Rogers v. Florence Printing Co., 106 S.E.2d 258, 261 (S.C. 1958)).  South Carolina places great importance on a plaintiff's ability to vindicate a right willfully invaded through the imposition of punitive damages.  The majority approach allows for punitive damage to serve this vital purpose. Additionally, as the Supreme Court of South Carolina has noted that "because a principal stands to gain financially from the actions of an agent, it makes more sense to allow additional monetary damages in the form of punitive damages against a principal." Gause, 742 S.E.2d at 651.

Thus, the court, applying the law that the Supreme Court of South Carolina would most likely adopt, employs the majority approach to resolve the defendants' motion for summary judgment and finds that Campbell can be held vicariously liable in punitive damages for the acts of its employee, Donajkowski. As such, the court denies defendants' motion for partial summary judgment in full.

## IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** defendants' motion for partial summary judgment and **GRANTS IN PART** and **DENIES IN PART** defendants' motion in limine.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**July 20, 2020
Charleston, South Carolina**